No. 3248.—SUCCESSION OF MARY SMITH, HENRY NEWELL, Opponent *v.* SALLIE P. SMITH.

A notarial act executed by the wife, whereby she agrees to postpone the rank of her mortgage on the property of her husband to that of a creditor, is null and of no effect as against her, if the evidence shows that she signed it under threats made by her husband.
In a case like this, where a creditor is seeking to enforce a subsequent mortgage on the ground that the wife, who holds the prior mortgage, has postponed her preference to him, it is incumbent on the creditor to show that the postponement was her own voluntary act. The fact that no threats were heard by the notary at the time of signing the act of postponement of the wife's mortgage to that of the creditor, does not impair or weaken the statements of the wife that she was compelled to sign the act under threats of her husband that he would drive her off the place if she did not sign it.

APPEAL from the Parish Court of East Baton Rouge. *Posey,* J. *Andrew S. Herron* and *Greves & Dupree,* for opponents, appellees. *B. E. Chaney,* for administrator, appellant.

TALIAFERRO, J. Upon a tableau filed by the administrator of the estate of Mary Smith, a claim of Sallie Smith, a creditor, was placed and assigned a rank by priority of mortgage superior to the mortgage

of Newell who opposed the tableau on that account. The opposition was sustained and Mrs. Smith has appealed.

The facts seem to be that the mortgage of Sallie Smith stood originally first in rank on the books of the mortgage office of that parish; that she waived and postponed her mortgage in favor of Newell so as to let his mortgage take precedence, and that that operation took place in this wise: Newell, a merchant, made advances of supplies to Mary Smith, and Alexander Smith, her agent, to enable her to make a crop in the year 1867. Newell at the end of the year received nothing in payment for his advances, accepted a note made payable first November, 1868, secured by what he was informed was a first mortgage on his debtor's plantation. He advanced supplies again for the year 1868, taking another mortgage in February of that year, to secure himself. Finding afterwards that Mrs. Sallie Smith had a mortgage on the same property of prior rank to his mortgages, he threatened Mary Smith and Alexander Smith, her agent, and the husband of Sallie Smith, that unless he was given the first mortgage he would institute proceedings against Mary Smith for obtaining goods under false pretences. Accordingly Sallie Smith executed an act by by which her mortgage was postponed to that of Newell. Sallie Smith states under oath as follows: "I did not execute and sign the act of relinquishment of first mortgage in favor of Henry Newell, of my own free will and accord. My husband made me do it. I refused to do so but my husband said I must do it. My husband told me that if I did not sign it, Mr. Newell would institute a criminal prosecution against Mrs. Mary Smith. I derived no benefit from the supplies received from Newell, was not here at the time, but at Jackson. Mrs. Mary Smith was my husband's mother."

*Cross-examined.*—"My husband threatened me when Dupree and Mr. McGrath came out for me to sign; no one present at the time he threatened me, but I told his niece and his mother. My husband told me if I didn't sign I should not stay on the place. Do not remember what else he told me. I knew at the time that Newell had furnished provisions to Mrs. Mary Smith. My husband lived at Mrs. Smith's at the time the mortgage was given to Mr. Newell, and at the time of the relinquishment I was also there. We came there in December, 1867."

If fraud and dishonesty were practiced upon Newell, he has utterly failed to show that this married woman had any participation whatever in it. There is nothing whatever to contradict her statements in regard to the duress under which she was placed, and the compulsion under which she signed the act giving precedence to Newell's mortgage. McGrath, the notary before whom the relinquishment was signed, testified that the act was read to all the parties and that all seemed to know what he came for, and adds that "if there were any

threats it was not in his presence." The fact of no one being present. when the threat was made, as stated by the wife, that she should not stay on the place if she refused to sign the act, it is urged, renders her testimony weak and shadowy. We do not so regard it. Threats of that kind are not likely to be made in public, for the purposes for which they are made would thereby be more likely to be defeated. Certainly no consideration was received by Sallie Smith for postponing her rights on Mary Smith's property to those of Newell. Her mortgage was of record prior to the time of the execution of those in favor of Newell. He therefore, on legal contemplation, had notice of its existence. It was, however, no impediment to his exercising his privilege upon the crop of 1867, which he complains was run off and his lien thereby lost. His lack of diligence and losses resulting therefrom should not be compensated at the expense of the party with whom he is contesting when he fails to show that that party contributed in any manner to the injuries he complains of. In requiring the wife's mortgage to be postponed in his favor he appears to have been willing to inflict wrong upon another in order to repair wrongs done upon himself. We are of the opinion that the act of relinquishment executed, as the testimony shows, under compulsion and against the will of the party executing, is null and void.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed. It is ordered, further, that the opposition of Newell be overruled and dismissed; that the mortgage debt of Sallie Smith against the succession be recognized as entitled to priority of mortgage on the property mortgaged; and that the administrator's tableau be homologated, the costs. to be paid by the succession.